**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **JENNA HORNBUCKLE,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL NO. 6:24-CV-00616-ADA** |
| **VISTRA CORP. and LUMINANT GENERATION COMPANY LLC,** | § | |
| **Defendants.** | § | |

**ORDER**

Before the Court is Defendants' Motion for Summary Judgment. Dkt. No. 22. The Court has reviewed the Motion, Plaintiff's Response (Dkt. No. 24), Defendants' Reply (Dkt. No. 25), the applicable laws, and the record of this case. The Court finds that Defendants' Motion should be granted.

## I. BACKGROUND

Plaintiff Jenna Hornbuckle sued Vistra Corp. and Luminant Generation Company LLC (collectively, "Defendants") alleging discrimination and retaliation under the Americans with Disabilities Act of 1990 ("ADA"). Dkt. No. 1, Compl. Plaintiff was employed by Defendants from June 4, 2012, until she was terminated on August 19, 2023. *Id.* ¶ 4.1. Plaintiff was an Operations Procedure Writer at the Comanche Peak Nuclear Power Plant and as part of her job she was expected to be on-site at least three days a week and travel on foot as needed to evaluate areas of the nuclear plant or talk to colleagues. *Id.*; Dkt. No. 22-2, Ogletree Decl. ¶ 6.

Plaintiff began experiencing health issues in December of 2022 which she attributes to Muckle Wells Syndrome, and she requested and went out on short-term disability. Dkt. No. 1, Compl. ¶ 4.2. On April 26, 2023, Plaintiff asked her supervisor if she could come back to work

and temporarily work from home and her supervisor informed her that she could not work from home because of the company's policy that she be on-site three days a week. *Id.* ¶ 4.3. Plaintiff underwent emergency surgery on May 24, 2023, and ultimately experienced an unfortunate series of complications and further health problems leading up to the time when her short-term disability expired on June 9, 2023. *Id.* ¶ 4.4.

Following the end of her short-term disability, Plaintiff applied for long-term disability benefits and concurrently engaged with Defendants in a request for workplace accommodations. *See id.* ¶¶ 4.5-4.6; Dkt. No. 22-1, Hornbuckle Dep. 166:7-15. Plaintiff ultimately was approved for long-term disability benefits. *See* Dkt. No. 22-1, Hornbuckle Dep. 166:16-17.

Despite her concurrent application for long-term disability benefits, Defendants engaged with Plaintiff in an effort to determine whether there could be reasonable workplace accommodations. Dkt. No. 1, Compl. ¶¶ 4.5-4.7. Plaintiff's complaint alleges that Defendants' refusal to provide an accommodation lacked any basis and was disability discrimination and retaliation. *Id.* ¶ 4.10. Defendants, however, explain that in the process of completing accommodation paperwork, the paperwork Plaintiff submitted indicated that she was not released to return to work and could not perform any work for at least six months. Dkt. No. 22-2, Ogletree Decl. ¶¶ 12-13. Defendants also explained that Plaintiff's medical provider, Leslie Ross, P.N.P., spoke with Jennifer Ogletree, Director of Employee Relations for Defendants that was handling Plaintiff's accommodation request. *See id.* ¶¶ 3, 16. Defendants explain that Ms. Ross informed Ms. Ogletree that Plaintiff would likely only be able to work for four hours spread throughout the day and that she would be receiving palliative care at home during which times Plaintiff could not work at all. *Id.* ¶ 16. Ms. Ross confirmed that Plaintiff could not perform the essential functions of her job and that these conditions were expected to last for at least six months. *Id.* ¶¶ 16-17. Plaintiff

similarly confirmed that her health problems result in her having "episodes" a couple times a week, lasting a couple of hours or all day, wherein she has blurred, double vision that impacts her ability to read and has no treatment. *See* Dkt. No. 22-1, Hornbuckle Dep. 71:3-72:6.

Ultimately, after Plaintiff was approved for long-term disability benefits, her employment was terminated on August 19, 2023. Dkt. No. 1, Compl. ¶ 4.8. Defendants told Plaintiff the reason for her termination was that she could not perform the essential duties of her job. *Id.*

## II. LEGAL STANDARD

Summary judgment is proper where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. If the record, taken as a whole, could not lead a rational fact finder to find for the non-moving party, then there is no genuine issue for trial. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In determining whether a genuine issue of material fact exists, the court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Harville v. City of Houston, Mississippi*, 945 F.3d 870, 874 (5th Cir. 2019); *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371–372 (5th Cir. 2002). Where the non-moving party will bear the burden of proof at trial on a dispositive issue, that party also bears the burden of production to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## III. ANALYSIS

### A. Disability Discrimination Claims

The ADA prohibits employers from discriminating against an employee on the basis of a disability as defined by the Act. *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2016) (citing 42 U.S.C. § 12112 (2009)). "In a discriminatory-termination action under the ADA, the

employee may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Id.* (quoting *EEOC v. LHC Grp., Inc.,* 773 F.3d 688, 694 (5th Cir. 2014)).

Under the *McDonnel-Douglas* burden shifting test for establishing a disability discrimination case, the plaintiff must prove (1) that she had a disability, (2) that she was qualified for the job, and (3) that she was subject to an adverse employment decision on account of her disability. *See id.* (citing *LHC Grp.,* 773 F.3d at 697). If the plaintiff meets that burden, the defendant can rebut the presumption of discrimination by articulating legitimate business reasons for the adverse action. *See id.* (citing *LHC Grp.*, 773 F.3d at 701). Then, if the defendant provides a legitimate reason, the plaintiff must offer evidence to show that the reason was a pretext for discrimination. *Id.* (citing *LHC Grp.*, 773 F.3d at 702).

The parties do not dispute that Plaintiff suffered from a disability for the purposes of establishing the first required element. Here, the primary issue raised by Defendants is that Plaintiff cannot establish a prima facie discrimination case because she cannot satisfy the second element of *McDonnel-Douglas*'s prima facie requirements. Specifically, Defendants argue that Plaintiff cannot show that she was a qualified individual—because she was unable to perform the essential functions of her job or any job with or without an accommodation. See Dkt. No. 22, Defs' Mot. at 8.

The Fifth Circuit has defined an "otherwise qualified person as 'one who is able to meet all of the program's requirements in spite of his handicap.'" *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996) (citations omitted). To avoid summary judgment on whether she is a qualified individual, Hornbuckle must show (1) that she could perform the essential functions

of the job in spite of her disability or (2) that a reasonable accommodation of her disability would have enabled her to perform the essential functions of her job. *See id.* "[R]egular work-site attendance is an essential function of most jobs." *Credeur v. La., Office of Atty. Gen.*, 860 F.3d 785, 793 (5th Cir. 2017). This is especially true when the position is interactive and involves a significant degree of teamwork. *Id.* An employee who applies for and receives long-term disability benefits is not a "qualified individual." *Crews v. Dow Chem. Co.*, 287 F. App'x 410, 412 (5th Cir. 2008) (per curiam). A plaintiff cannot claim incapacity to work for the purposes of receiving long-term disability benefits and then claim capacity to work for the ADA. *Id.*

The Court finds that Hornbuckle has not shown that she was a qualified individual for the purposes of establishing her prima facie discrimination case. While the Court is sympathetic to Plaintiff's illness and health problems, the Court finds that her claims against her employers cannot prevail. Plaintiff's medical provider informed Defendants of her limitations, as Ms. Ogletree confirmed. Plaintiff disputes that her "doctor" had any such conversation—but the Court does not find that dispute credibly raises a genuine issue of material fact. Plaintiff ultimately acknowledged that Ms. Ross spoke with Ms. Ogletree on the phone about the extent of her healthcare. *See* Dkt. No. 24-1, Hornbuckle Dep. 184:10-183:24. Further, Plaintiff herself testified about the limitations caused by her health problems. She testified that she periodically had "episodes" that left her unable to work for periods of hours or days with no treatment. *See* Dkt. No. 22-1, Hornbuckle Dep. 71:3-72:6.

The Court notes that Plaintiff's inability to in person three times a week alone should likely foreclose further analysis. Her job description makes that a requirement, and she herself recognized that she was required to be on-site three days a week. Dkt. No. 24-1, Hornbuckle Dep. 155:17-21; Dkt. No. 22-2, Ogletree Decl. ¶ 6. However, the Court notes that even if the in-person requirement

could be solved for the purposes of an accommodation, Plaintiff still would not be a "qualified individual" even if permitted to work remotely. The Court finds that Plaintiff has not demonstrated a prima facie discrimination case because she cannot show she was a "qualified individual." Summary judgment should therefore be granted for Defendants.

**B. Retaliation Claim**

Though Plaintiff's Complaint does not lay out the elements of a retaliation claim with precision, Defendants addressed it in their Motion and Plaintiff defended the claim in her Response. Ultimately, the Court finds that summary judgment should be granted for Defendants on Plaintiff's retaliation claim.

Plaintiff alleges that she was retaliated against for complaining about her disability discrimination and requesting an accommodation. Dkt. No. 1, Compl. ¶ 4.10. Plaintiff claims that the refusal to allow her coworker to share Plaintiff's GoFundMe was an act of retaliation, as was her termination. *Id.* ¶¶ 4.9-4.10. By way of background, Plaintiff alleges that she started a GoFundMe to help with medical bills while not working, and a supervisor told Plaintiff's coworker he could not share it. *Id.* ¶ 4.5.

To state a prima facie case for a retaliation claim, the plaintiff must "demonstrate that: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Gorman v. Verizon Wireless Texas, L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014). An action is "materially adverse" when it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 126 S. Ct. 2405, 2409, 165 L. Ed. 2d 345 (2006). The employee's burden is to prove that the adverse employment

action taken against the plaintiff would not have occurred "but for" the protected conduct. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).

Starting with the GoFundMe allegation, the Court does not find that Defendants' refusal to allow a coworker to share a personal fundraising campaign constitutes a materially adverse employment action. The Court does not find that Plaintiff can demonstrate a genuine issue of material fact that a reasonable worker would avoid making or supporting a charge of discrimination based on the fear that they could not personally solicit funds from coworkers. Therefore, summary judgment is appropriate for Defendants based on that component of Plaintiff's claim.

Next, addressing Plaintiff's retaliation claim alleging that she was terminated due to her seeking an accommodation. The Court finds that Plaintiff cannot show that her termination would not have occurred but-for her accommodation request. Quite the opposite: Defendants engaged in a process with Plaintiff to determine whether there was any accommodation which could be provided. Defendants terminated Plaintiff because she was granted long-term disability benefits and could not perform the essential duties of her job. Therefore, Plaintiff cannot state a prima facie retaliation claim because she cannot show that but-for her protected activity of requesting an accommodation, she would not have been terminated. She would have been terminated regardless of any accommodation process—she cannot perform the essential requirements of her work.

### C. Failure to Accommodate

The Court addresses Plaintiff's argument that her Complaint included a failure-to-accommodate claim. *See* Dkt. No. 24, Pl's Resp. at 14. To begin, the Court disagrees that Plaintiff's Complaint states such a claim—even if it intended to do so implicitly. Regardless, the Court will

address why, even if such a claim can be found in the Complaint, judgment for Defendants is warranted.

To prevail on a failure-to-accommodate claim under the ADA, a plaintiff must show: (1) she is a qualified individual with a disability, (2) the disability and its consequential limitations were known by the covered employer, and (3) the employer failed to make reasonable accommodations for such known limitations. *See Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 587 (5th Cir. 2020). As previously discussed, Plaintiff cannot show that she was a qualified individual. Therefore, she cannot state a prima facie failure-to-accommodate claim.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Dkt. No. 22) is GRANTED. Final judgment will issue separately.

**IT IS SO ORDERED.**

**SIGNED** on August 18, 2026.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE